1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SIGNEO USA, LLC,  a Florida Limited Liability Company, SIGNEO LIMITED, a Cayman Islands Company, and SIGNEO INTERNATIONAL LTD.,  a Hong Kong Limited Liability Company,<br><br>                              Plaintiffs,<br><br>        v.<br><br>SOL REPUBLIC, INC., a Delaware corporation,<br><br>                              Defendant. | Case No.: 5:11-cv-06370-PSG<br><br>**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**<br><br>**(Re: Docket No. 11)** |

Plaintiffs Signeo USA, LLC, Signeo Ltd., and Signeo International Ltd. ("Signeo") move for a preliminary injunction against Defendant and Counterclaimant SOL Republic, Inc. ("SOL Republic") on the basis of trademark infringement. Signeo seeks to enjoin SOL Republic from all manner of manufacturing, distributing, selling, and promoting its allegedly infringing "SOL" line of headphones and earphones.

On December 16, 2011, Signeo filed its complaint.[1] On January 31, 2012, Signeo filed a motion for a preliminary injunction.[2] On February 22, 2012, Signeo applied for expedited

---

[1] *See* Docket No. 1 (Compl.).

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

1   discovery.[3] On February 28, 2012, the parties appeared for oral argument regarding Signeo's

2   motion for a preliminary injunction, as well as for its application for expedited discovery. On

3   March 6, 2012, the court granted Signeo's application for expedited discovery regarding, among

4   other things, the issue of actual confusion.[4] On April 24, 2012, after the close of expedited

5   discovery, both Signeo and SOL Republic filed supplemental briefing – Signeo in support of its

6   motion for a preliminary injunction,[5] and SOL Republic in opposition to Signeo's motion.[6] On

7   May 1, 2012, SOL Republic filed a reply brief,[7] and on May 2, 2012, Signeo too filed a reply.[8] On

8   May 22, 2012, the parties again appeared for oral argument to update the court on what, if any,

9   effect the expedited discovery should have on the court's decision to grant the preliminary

10  injunction. After considering the parties' briefing and arguments, the court finds that Signeo has

11  not met the threshold showing required for issuance of a preliminary injunction. The motion for a

12  preliminary injunction is DENIED.

13                                    I.    BACKGROUND

14          Signeo owns the registered SOUL trademark,[9] registration number 3805998, which covers

15  a range of consumer electronic products including MP3 players, speaker sets, computer

16  peripherals, portable audio CD players, recorders, and audio accessories such as earphones and

---

[2] *See* Docket No. 11 (Pl.'s Mot. for Prelim. Inj.).

[3] *See* Docket No. 17 (Pl.'s *Ex Parte* Appl. for Expedited Disc.).

[4] *See* Docket No. 24 (Order Granting-In-Part Mot. for Expedited Disc.).

[5] *See* Docket No. 32 (Pl.'s Supp. Brief).

[6] *See* Docket No. 31 (Def.'s Supp. Brief).

[7] *See* Docket No. 40 (Def.'s Reply Brief).

[8] *See* Docket No. 42 (Pl.'s Reply Brief).

[9] Signeo Ltd. is the owner of the SOUL trademark. According to Signeo, both Signeo International LTD and Signeo USA, LLC, as well as an affiliated company called AV Concept Holdings Ltd., "have the right from Signeo Ltd. to use the SOUL trademark." *See* Docket No. 11-1 ¶ 8 (Bonefant Decl.). Signeo International Ltd. is the parent company of Signeo USA, LLC and Signeo Ltd. Signeo USA, LLC does business as SOUL Electronics and is responsible for marketing products bearing the SOUL mark domestically. *See id.* ¶ 4. By referring to "Signeo" collectively for the purpose of this motion, the court does not make any determination regarding the validity of the other Signeo entities' claims to use of the mark.

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

United States District Court
For the Northern District of California

headphones.[10] Signeo filed its registration application on August 31, 2009 for the SOUL mark, which was registered on June 22, 2010.[11] According to Signeo, the mark has been in commercial use since as early as October 2003 and has been used in association with electronic products since 1998.[12]

Signeo's line of high-end, designer SOUL by Ludacris headphones display the SOUL trademark.[13] SOUL headphones are sold in the United States and worldwide through on-line and in-store retailers such as Apple, Best Buy, Amazon.com, and RadioShack.[14] Signeo markets its SOUL headphones through various online and social media, as well as print, radio, television, and product placement in movies, music videos, and through its well-publicized association with recording artist Christopher Bridges, aka Ludacris.[15] Signeo recently closed additional endorsement deals with several world-class athletes.[16] Since 2009, Signeo has spent over $2.5 million on advertising to promote the SOUL mark and products.[17] The SOUL headphone product line enjoys a strong online presence with followers on Facebook, Twitter, and the SOUL by Ludacris website. Since April 2011, retail sales of the SOUL headphones have exceeded $10 million.[18] Signeo prices the SOUL headphones at points ranging from $69.95 to $299.95.[19]

---

[10] *See* Docket No. 11-9 (Pavlik Decl.), Ex. A.

[11] *See* Docket No. 11-1 ¶ 7 (Bonefant Decl.).

[12] *See id.* ¶¶ 7, 9.

[13] Signeo does not specify whether the SOUL headphone product line includes SOUL by Ludacris, or whether all SOUL headphones are SOUL by Ludacris. The court will refer to SOUL headphones to include all of Signeo's high-end, designer headphones and earphones using the SOUL mark and subject to this motion.

[14] *See* Docket No. 11-3 ¶ 5 (Bergman Decl.).

[15] *See id.* ¶ 3.

[16] *See* Docket No. 16-1 ¶ 6 (Bergman Rebuttal Decl.).

[17] *See* Docket No. 11-2 ¶ 3 (London Decl.).

[18] *See* Docket No. 16-1 ¶ 5.

[19] *See* Docket No. 11-3 ¶ 6.

3

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

1    SOL Republic is a Delaware corporation formed in 2010 with its headquarters in San

2   Francisco, California. SOL Republic is the developer of the SOL Republic line of headphones,[20]

3   which is currently SOL Republic's only product.[21] SOL Republic's trademark is "SOL

4   REPUBLIC." Its headphones appear with the shortened, acronym-only "SOL" geometric logo on

5   the earpiece.[22] The "SOL" in SOL Republic stands for "Soundtrack of Life."[23] Like Signeo, SOL

6   Republic has invested substantial resources into building its brand and mark recognition, devoting

7   $1.5 million to marketing and sales thus far.[24] The SOL Republic headphones retail in many of the

8   same on-line and in-store venues as SOUL headphones, including the Apple store and Best Buy.[25]

9   SOL Republic's headphones price for slightly less than SOUL's headphones, ranging from $59.99

10   to $129.99.[26]

11    Signeo contends that as a result of its extensive and continued efforts to promote the SOUL

12   mark and ensure the headphone line's reputation for quality and distinctiveness in the designer

13   headphone market, it has built substantial goodwill around the mark and consistently receives

14   positive feedback from consumers and industry partners in conjunction with the SOUL product

15   line.[27] Signeo claims that the SOL Republic headphones, displaying only "SOL," are intentionally

16   and confusingly similar to the SOUL line of headphones.[28] Signeo alleges that SOL Republic is

17   infringing Signeo's SOUL trademark by its "unauthorized use of a confusingly similar mark and

18   trade name," resulting in actual and potential consumer and retailer confusion and irreparably

---

[20] *See* Docket No. 11-1 ¶ 33.

[21] *See* Docket No. 14-2 ¶ 6 (Hix Decl.).

[22] *See* Docket No. 14-1 ¶ 7 (Combs Decl.).

[23] *See* Docket No. 14-3 ¶¶ 8, 9 (Lee Decl.).

[24] *See* Docket No. 14-2 ¶ 6.

[25] *See id.*; *see also* Docket No. 32 at 7-8 (Pl.'s Supp. Brief).

[26] *See* Docket No. 11-1 ¶ 35.

[27] *See generally* Docket No. 11 at 5-6 (Pl.'s Mot. for Prelim. Inj.); Docket No. 1 ¶¶ 13-14, 29 (Compl.).  *See also* Docket No. 11-1 ¶ 21.

[28] Docket No. 1 ¶ 15.

4

harming the goodwill and reputation that Signeo has built around the SOUL mark.[29] Signeo seeks a broad injunction against SOL Republic to prevent the manufacture, distribution, licensing, sales and marketing of "headphones or other electronics products labeled with . . . the acronym 'SOL.'"[30] Signeo's proposed injunction also would require the impoundment of all "SOL" products and their recall from "all channels of trade and distribution," including from third-party retailers.[31]

## II.    LEGAL STANDARDS

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[32] The extraordinary nature of the remedy requires the district court, in the exercise of its sound discretion, to "pay particular regard for the public consequences in employing" injunctive relief.[33] "The proper legal standard for preliminary injunctive relief requires a party to demonstrate [1] 'that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'"[34] The court "'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"[35] Following *Winter*, the Ninth Circuit made clear that "to the extent [its] cases have suggested a lesser standard, they are no longer controlling, or even viable."[36]

---

[29] *See id.* ¶¶ 16-20.

[30] *See* Docket No. 11-10 at 2 (Pl.'s Proposed Order Granting Mot. for Prelim. Inj.).

[31] *See id.* at 2-3.

[32] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (noting that the scope of an injunction is reviewed using an abuse of discretion standard) (citing *Internet Specialties W., Inc. v. Milon-Digiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009)).

[33] *See Winter*, 555 U.S. at 24 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

[34] *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20)).

[35] *Winter*, 555 U.S. at 24 (quoting *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)).

[36] *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

United States District Court
For the Northern District of California

### III.   DISCUSSION

**A.   Evidentiary Objections**

The court first addresses the evidentiary objections raised by both parties with respect to the opposing side's declarations and evidence. In ruling on a preliminary injunction, the court may consider evidence that would be inadmissible at trial and, in its discretion, accords the appropriate weight to that evidence.[37] But if the asserted facts "are substantially controverted by counter-affidavits, a court should not grant [interlocutory injunctive] relief unless the moving party makes a further showing sufficient to demonstrate that he will probably succeed on the merits."[38]

Here, each side has challenged the admissibility of certain statements in the affidavits and accompanying exhibits submitted by the other side. In addition, on February 22, 2012, Signeo filed an application to take expedited discovery as a direct response to certain affidavits submitted by SOL Republic and that Signeo claims contain false statements and inaccurate testimony. To the extent that the court relies on any evidence that is subject to an objection, it does so in its discretion and having considered the appropriate weight to assign the evidence. Furthermore, the court's consideration of this evidence in the preliminary injunction context is without prejudice to either side raising its objections to the relevant testimony at the time of trial.

**B.   Standing**

SOL Republic challenges Signeo's standing to bring its trademark infringement claim because neither Signeo International Ltd. nor Signeo USA LLC is the owner of the SOUL mark.[39] SOL Republic contends that where only Signeo Ltd. registered the relevant mark, and the right of

---

[37] *See Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.") (citing 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil*, § 2949 at 471 (1972)). *See also V.L. v. Wagner*, 669 F. Supp. 2d 1106, 1115 n.8 ("[O]n a motion for a preliminary injunction, the Court may consider inadmissible evidence, giving such evidence appropriate weight depending on the competence, personal knowledge, and credibility of the declarants."); *Rouser v. White*, 707 F. Supp. 2d 1055, 1066 n.4 (E.D. Cal. 2010) (giving some weight to inadmissible evidence with respect to those issues that had occurred recently and in which the parties had not yet conducted discovery).

[38] *See K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1089 (9th Cir. 1972).

[39] Docket No. 14 at 2-3 (Def.'s Opp'n to Mot. for Prelim. Inj.) (citing *Visa U.S.A. Inc. v. First Data Corp.*, Case No. C 02-01786 JSW, 2005 WL 6271242, at *4 (N.D. Cal. 2005)).

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

the other two Signeo entities to enforce alleged infringement of the mark is unclear,[40] there is no basis for those plaintiffs to challenge SOL Republic's use of its competing mark. Without standing to bring their claims, SOL Republic argues that Signeo International Ltd. and Signeo USA LLC cannot establish a likelihood of success on the merits.

Trademark claims under the Lanham Act, 15 U.S.C. § 1114(1), may be brought by the registrant of the trademark, and including the registrant's legal representatives, predecessors, successors, and assigns.[41] With respect to a licensee, standing to sue depends largely on the rights granted to the licensee under the licensing agreement.[42] Where the licensing agreement is non-exclusive or does not confer a property interest in the mark that can be characterized as an assignment, the licensee does not have standing to bring an infringement action.[43]

The court agrees that the Bonefant Declaration alone does not establish Signeo International Ltd. or Signeo USA LLC's standing to bring an infringement claim for the SOUL trademark under 15 U.S.C. § 1114(1). For the purpose of Signeo's motion for a preliminary injunction, however, it is sufficient that Signeo Ltd. is itself the registrant of the SOUL mark and has standing to enforce its claim.[44] In this context, the court need not assess the other Signeo entities' right to enforce the SOUL mark.

---

[40] *See id.* SOL Republic objects to the rather vague statement in the Declaration of Bob Bonefant that "AV Concepts, Signeo International LTD and Signeo USA, LLC have the right from Signeo Limited to use the SOUL trademark." *See* Docket No. 11-1 ¶ 8.

[41] *See* 15 U.S.C. § 1127.

[42] *See Visa U.S.A. Inc.*, 2005 WL 6271242, at *3 (citing *Ultrapure Systems, Inc. v. Ham-let Group*, 921 F. Supp.l 659, 665 (N.D. Cal. 1996); Restatement (Third) of Unfair Competition § 33 cmt. D (1995)).

[43] *See id.* at *4 (citing *Ultrapure Systems* at 665; *Quabang Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 159-60 (1st Cir. 1977); *Int'l Soc'y for Krishna Consciousness of Western Pennsylvania v. Stadium Authority*, 479 F. Supp. 792, 797 (W.D. Pa. 1979)).

[44] It may be sufficient that Signeo International Ltd. and Signeo USA LLC have filed suit together with Signeo Ltd. *See Quabug Rubber Co.*, 567 F.2d at 159 (noting that "[t]here appear to be no cases where a nonexclusive licensee has been permitted to maintain a trademark infringement suit in the absence of the 'registrant.'"). Moreover, even non-exclusive licensee status – if that be the case – may be sufficient for Signeo International Ltd. and Signeo USA LLC to establish standing with regard to Signeo's second cause of action for false designation and trade mark infringement under 15 U.S.C. § 1125. *See id.* at 160 (noting that 15 U.S.C. § 1125 permits "any person who believes that he or she is or is likely to be damaged" to bring a civil action, not only the registrant of the mark).

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

**United States District Court**
For the Northern District of California

**C.    Signeo's Motion for Preliminary Injunction**

Signeo contends that a preliminary injunction is necessary in order to prevent ongoing and increasingly irreparable damage to its SOUL headphone business. It is Signeo's burden to establish, at a minimum, a likelihood of success on the merits and a likelihood of irreparable harm. However, SOL Republic bears the burden of showing a likelihood that any of its affirmative defenses to Signeo's trademark claims will succeed.[45]

**1.    Likelihood of Success on the Merits**

In order to establish a likelihood of success on the merits of its claims under federal trademark law, Signeo must demonstrate that SOL Republic is using a mark confusingly similar to its own valid, protectable trademark.[46]

*a.    Valid and Protectable Mark*

Signeo's registration of the SOUL trademark "constitutes prima facie evidence of the validity of the registered mark and of [Signeo's] exclusive right to use the mark on the goods and services specified in the registration."[47] Registration creates a rebuttable presumption that the trademark is valid. The presumption of validity of a registered mark may be overcome by a preponderance of the evidence, where the defendant presents some evidence of invalidity.[48] In analyzing an invalidity challenge, the court draws any inferences from the facts in favor of the party asserting the validity of its registered mark.[49]

---

[45] *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007) (explaining that the burdens at the preliminary injunction stage track the burdens at trial) (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006)).

[46] *See Brookfield Comm'ns, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). *See also KP Permanent Make-Up, Inc. v. Lasting Impressions I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005).

[47] *See Brookfield Comm'ns*, 174 F.3d at 1047; 15 U.S.C. § 1057(b).

[48] *See Vuitton et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 775-76 (9th Cir. 1981); *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002) (holding that the presumption of validity is "pierced," leaving merely evidence "of registration," if defendant "can demonstrate through law, undisputed facts, or a combination thereof that the mark is invalid").

[49] *See id.* at 776.

8

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

1    Signeo's SOUL trademark received its registration number from the United States Patent

2  and Trademark Office ("USPTO") on June 22, 2010.[50] SOL Republic challenges the validity of the

3  SOUL trademark registration on two independent grounds – first that Signeo was not using the

4  mark on all of the goods listed in the registration, and second that Signeo is not the true owner of

5  the mark. The failure to confirm the accuracy of a trademark application with respect to the use of

6  the mark on the identified goods may result in cancellation of the registration on the ground that

7  the registration was obtained fraudulently.[51] SOL Republic contends that the goods claimed by

8  Signeo in its application to the USPTO are far more than the single specimen – an mp3 player –

9  submitted in conjunction with the trademark application, and that all of the goods strangely have

10  the same claimed date of first use.[52] Although SOL Republic points to potential gaps in the

11  evidence Signeo has submitted in support of its trademark claims, SOL Republic has offered no

12  actual evidence to support its invalidity challenge. Also, if SOL Republic ultimately succeeds in

13  proving that Signeo did not use the mark on all of the identified goods, it will invalidate the

14  trademark only with respect to those goods that were missing.[53] Because SOL Republic has not

15  presented any evidence challenging the validity of the SOUL mark as to headphones specifically,

16  and any inferences must be resolved in favor of Signeo, the present record is sufficient under the

17  "preponderance of the evidence" standard required under *Vuitton*.

18    Similarly, with respect to SOL Republic's invalidity challenge based on Signeo's

19  ownership of the SOUL mark, SOL Republic has not met its burden. SOL Republic points to the

20  apparent inconsistency between the mark's purported use in commerce since 2003 when Signeo

21  Ltd. was not was not formed until 2005, and that it remains unclear how AV Concepts' purported

22  commercial use of the SOUL brand prior to the 2003 date conferred ownership rights to Signeo.[54]

---

23  [50] *See* Docket No. 11-1 ¶ 7.

24  [51] *See In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009); *Bauer Bros. LLC v. Nike, Inc.*, Case
25  No. 09cv500-WQH-BGS, 2011 WL 843971, at *6 (S.D. Cal. Mar. 8, 2011)).

26  [52] *See* Docket No. 14 at 4.

27  [53] *See G&W Laboratories, Inc. v. GW Pharma Ltd.*, 89 U.S.P.Q.2d 1571, 2009 WL 226625
   (T.T.A.B. 2009).

28  [54] *See* Docket No. 14-4 (Leonard Decl.), Exs. A, B; Docket no. 11-1 ¶¶ 5, 8, 12, 14-15.

9

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

SOL Republic has not shown, however, that Signeo Ltd. did not use the SOUL mark in commerce between its formation in 2005 and its application filing date in 2009. Because the date of first use need only be earlier than the filing date for the purpose of registration,[55] the presumption for the validity of the SOUL trademark stands.[56]

### b.   *Confusion*

"Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark."[57] Courts in this circuit analyze the likelihood of confusion under the eight-factor test set forth in *AMF, Inc. v. Sleekcraft Boats*. The *Sleekcraft* factors are: (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the degree of care customers are likely to exercise in purchasing the goods; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion into other markets.[58] "The *Sleekcraft* factors are intended as an adaptable proxy for consumer confusion, not a rote checklist."[59] The court accordingly will focus on those factors most relevant to a determination of consumer confusion at this stage in the case.

### 1.   *Strength of the Mark*

Strength of the mark is determined by looking to both conceptual and commercial strength.[60] "The stronger the mark – meaning the more likely it is to be remembered and associated

---

[55] *See General Mills, Inc. v. Nature's Way Prods., Inc.*, 202 U.S.P.Q. 840, 1979 WL 24844 (T.T.A.B. 1979).

[56] The court makes this finding without prejudice to SOL Republic introducing evidence at a later time in support of its affirmative defense of invalidity.

[57] *KP Permanent Make-Up, Inc.*, 408 F.3d at 608 (citing *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001)).

[58] *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) (abrogated in part on other grounds by *Mattel, Inc. v. Walking Mountain Prod.*, 353 F.3d 792 (2003)).

[59] *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1150 (9th Cir. 2011) (referencing other circuit cases describing the *Sleekcraft* test as "pliant," and intended to provide "helpful guideposts," not to serve as rigid requirements or "hoops that a district court need jump through to make the determination") (citations omitted).

[60] *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000).

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

United States District Court
For the Northern District of California

1   in the mind with the mark's owner – the greater the protection it is accorded by the trademark

2   laws."[61]

3       Conceptual strength involves classification of a mark "along a spectrum of generally

4   increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful."[62] The

5   SOUL trademark is neither "inherently distinctive," meriting "the widest ambit of protection," nor

6   purely "descriptive," meriting protection only when secondary meaning is shown.[63] Some

7   imagination is required to link "SOUL" to a line of headphone products; but it is not an obviously

8   descriptive term for a consumer electronic device, specifically a headset.[64] The "SOUL" trademark

9   suggests a subtle quality of the audio accessory products that qualifies it for some protection from

10  potential infringement without the need to establish a secondary meaning.[65] The commercial

11  strength of Signeo's particular SOUL trademark is strengthened by its market visibility and

12  recognition by the consumer public, particularly based on its association with Ludacris.[66] Yet the

13  fact that many other trademark registrations related to music and electronic goods contain the term

14  SOUL[67] weakens its strength and the range of protection to which it is entitled. On balance, the

15  court finds that Signeo's SOUL registered trademark merits some protection as a suggestive mark

---

[61] *Network Automation, Inc.*, 638 F.3d at 1149.

[62] *Id.*

[63] *See Sleekcraft Boats*, 599 F.2d at 349 (describing sliding scale of marks from arbitrary to suggestive to descriptive).

[64] *See id.* (looking to criteria of "imaginativeness involved in the suggestion" and whether the trademark will "inhibit legitimate use of the mark by other sellers" as factors to distinguish between descriptive and suggestive marks).

[65] *See Watkins Prods., Inc. v. Sunway Fruit Prods., Inc.*, 311 F.2d 496, 499 (7th Cir. 1962) ("[A] suggestive mark . . . is entitled to protection without secondary meaning being proved.").

[66] *See GoTo.com, Inc.*, 202 F.3d at 1207 (holding that the more likely a mark is to be remembered and associated in the public mind with the mark's owner, the greater protection the mark is accorded by trademark laws).

[67] *See* Docket No. 14-4, Ex. D (compiling 86 examples of trademark registrations containing the term SOUL). Signeo responds that only two of the eighty-six examples list headphones or earphones among the covered products. But this does not diminish the fact that "soul" is a common term used to describe products related to experiencing entertainment through music, video games, or consumer electronic or computer devices that are not far removed from headphones or earphones.

11

**United States District Court**
For the Northern District of California

1    with widespread recognition and market presence. But to the extent that the mark is weakened by

2    the common use of the term "soul" in related products, Signeo must prevail on other factors –

3    particularly similarity of the marks and relatedness of the goods – in order to demonstrate a

4    likelihood of confusion.[68]

5              ## 2.  *Similarity of the Marks*

6              "Similarity of the marks is tested on three levels: sight, sound, and meaning."[69] The marks

7    are evaluated "as they are encountered in the marketplace," with similarities weighing more

8    heavily than differences.[70]

9              Signeo's mark is the word mark "SOUL," [71] with "SOUL" and a stylized "S" appearing on

10   its earbuds, although its headphone product line is referenced as "SOUL by Ludacris." SOL

11   Republic's mark is "SOL REPUBLIC,"[72] but the stylized "SOL" logo appears alone on the bud of

12   its headphone products. Signeo argues that SOL Republic's truncated acronym SOL differs from

13   Signeo's mark by only a single letter, and the two are pronounced identically as \sōl\. According to

14   Signeo, the near-identical visual and auditory similarity between "SOUL" and "SOL" is such that

15   the public and even retail world is bound to confuse – and already has begun to confuse – the two

16   parties' product lines. SOL Republic responds that the marks that consumers encounter from

17   retailers are distinct, namely "SOUL by Ludacris" as opposed to "SOL REPUBLIC."[73] SOL

18   Republic also argues that the difference in meaning further differentiates the marks, with "SOL"

19   standing for "Soundtrack of Life," or at a minimum connoting the Spanish word for "sun."

---

[68] *See Sleekcraft Boats*, 599 F.2d at 350 ("Although appellant's mark is protectible and may have been strengthened by advertising . . . it is a weak mark entitled to a restricted range of protection. Thus, only if the marks are quite similar, and the goods closely related, will infringement be found.") (citations omitted).

[69] *Sleekcraft Boats*, 599 F.2d at 351 (citing *Plough, Inc. v. Kreis Laboratories*, 314 F.2d 634, 638 (9th Cir. 1963); *Network Automation, Inc.*, 638 F.3d at 1150.

[70] *See id.* (citing *Esso Standard Oil Co. v. Sun Oil Co.*, 229 F.2d 37, 50 (D.C. Cir. 1956), *Cert. denied*, 351 U.S. 973 (1956)).

[71] *See* Docket No. 16 at 3 (Pl.'s Reply in Support of Mot. for Prelim. Inj.).

[72] *See* Docket No. 14 at 6.

[73] *See* Docket No. 14-4, Ex. C; Docket No. 14-1, Ex. F.

12

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

United States District Court
For the Northern District of California

Visually, the mark is only vaguely similar when considered by its appearance on the product, where a reasonable consumer is unlikely to confuse the geometric, stylized "S-O-L" of SOL Republic's brand from the stylized "S" followed by "SOUL" of Signeo's brand.[74] This is even more the case when viewing the product as labeled by retailers, which refer either to "SOL REPUBLIC" or "SOUL by Ludacris."[75] Yet when spoken, unless the speaker differentiates "SOUL *by Ludacris*" from "SOL *Republic*," the marks are identical. "Sound is [] important because reputation is often conveyed word-of-mouth."[76] Signeo has submitted numerous examples wherein its own executives and employees have encountered confusion amongst retailers and industry players who appear to be confused between the brands based on the similar sound of the marks.[77] Taken together, however, the differences in meaning and sight at least equal the similarity in sound, and this does not suggest, at least for purposes of Signeo's preliminary injunction motion, a likelihood of confusion between the marks.

### 3. *Proximity of the Goods*

"For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists."[78] The court evaluates relatedness by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function.[79] The court considers this factor "in

---

[74] *Cf. Sleekcraft Boats*, 599 F.2d at 351 (finding that "except for two inconspicuous letters in the middle of the first syllable," the words Sleekcraft and Slickcraft are "the same," and because the names often appear in promotional material without the heavily differentiated logos, that effect is "negligible").

[75] *See* Docket No. 14-4, Ex. C.

[76] *Sleekcraft Boats*, 599 F.2d at 351.

[77] The parties dispute the admissibility of many of Plaintiffs' declarations that describe – sometimes using hearsay – their experiences with retailers and industry professionals confusing SOUL from SOL. Plaintiffs did not submit exhibits demonstrating any visual similarity between the marks or how they appear when advertised. Defendant submitted pages from the Apple online store that are somewhat useful for comparing the two products.

[78] *Sleekcraft Boats*, 599 F.2d at 350.

[79] *See Network Automation, Inc.*, 638 F.3d at 1150 (citing *Sleekcraft* at 350).

13

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

United States District Court
For the Northern District of California

conjunction with the labeling and appearance of the advertisements and the degree of care exercised by the consumers."[80]

The SOUL products at issue are high-end, designer headphones and earphones sold to consumers willing to pay between $69.95 and $299.95.[81] SOL Republic similarly produces higher-end headphones and earphones sold for between $59.99 and $129.99.[82] Both sets of products are sold through many of the same marketing channels, as discussed below. Thus, on the basis of relatedness or proximity alone, the products are nearly interchangeable. SOL Republic argues, however, that the visual presentation of "SOUL by Ludacris" as opposed to "SOL REPUBLIC" and the efforts of both companies to distinguish their brands, such as by Signeo's partnership with Ludacris, cut against any weight to be assigned this factor. Signeo responds that the designer headphone market is dominated by only a handful of key players in which none have a product, other than SOL Republic, that bears a mark similar to SOUL,[83] making the relatedness of the products more potent. The parties further disagree over the degree of care which consumers exercise in opting to purchase a headphone in the relevant market.[84] This factor weighs in favor of Signeo, because the degree of relatedness is significant, and without any supporting evidence, it is difficult to ascribe to consumers a degree of conscientiousness or selectivity based on marketing and advertising to foreclose the likelihood of confusion.

### 4. Evidence of Actual Confusion

"Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely."[85] "The focus is confusion with respect to the source of a product or

---

[80] Id.

[81] See Docket No. 11-3 ¶ 6.

[82] See Docket No. 11-1 ¶ 35.

[83] See Docket No. 11-1 ¶¶ 6, 21.

[84] Compare Docket No. 14-3 ¶ 13 (Lee Decl.) ("Consumers of headphones in price points above $20 are very brand conscious and take great care to purchase headphones . . . .") with Docket No. 16 at 5 (challenging Lee's assertion regarding headphone purchasers as speculation unsupported by admissible evidence).

[85] Sleekcraft Boats, 599 F.2d at 352 (citing Plough, 314 F.2d at 639)).

14

service."[86] The critical determination for confusion is that of prospective purchasers in the marketplace, not that of vendors, industry insiders, or others not representative of the consumer public.[87] Because actual confusion is difficult to prove, evidence of such confusion will be weighted heavily, but the absence thereof is not dispositive.[88]

Signeo contends that in the months during which SOL Republic has promoted its product, actual confusion has materialized. Signeo has submitted several declarations describing instances of apparent confusion by retail associates at both Best Buy, Apple, and InMotion stores who were unable to identify which brand produced the "SOUL by Ludacris" headphones, as well as encounters between Signeo executives and industry players at the 2012 International Consumer Electronics Show ("CES") in Las Vegas who appeared at the SOUL booth looking for SOL Republic's founder Kevin Lee.[89]

Signeo applied for limited, expedited discovery in order to explore the issue of actual confusion by deposing several industry representatives who have reported that their group members have had extensive discussions about industry confusion over the SOUL and SOL REPUBLIC product lines, as well as SOL Republic's founders. After the close of expedited discovery, Signeo claimed to have found several instances of actual confusion at the consumer level, as opposed to confusion by retail staff or industry personnel.[90] Signeo points to the following instances of consumer confusion: (1) a letter from a mother whose son inadvertently purchased

---

[86] *Rearden LLC v. Rearden Commerce, Inc.*, 597 F. Supp. 2d 1006, 1023 (N.D. Cal. 2009) (citing *Entrepeneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002)).

[87] *See id.* (citing *Accuride Intern., Inc. v. Accuride Corp.*, 871 F.2d 1531, 1535 (9th Cir. 1989)).

[88] *Sleekcraft Boats*, 599 F.2d at 352-53. The court further notes that ordinarily this factor may be "diminished" at this stage due to a "sparse record" and the parties having had no opportunity for meaningful discovery. *See Network Automation, Inc.*, 638 F.3d at 1151. Here, however, the court provided Signeo a substantial opportunity for discovery on this very issue, and nothing in the circuit's case law suggests that under these circumstances a failure to provide meaningful evidence of actual confusion has to be ignored completely.

[89] *See, e.g.*, Docket No. 11-1 ¶¶ 38-41; Docket No. 11-3 ¶¶10-15; Docket No. 11-2 ¶¶ 8-11; Docket No. 11-7 ¶¶ 3-6 (Westbrook Decl.). Again, Defendant objects to Plaintiffs' evidence as largely based on hearsay or inadmissible opinion testimony regarding the meaning of a third party's purported "confusion."

[90] *See* Docket No. 32 at 2-4 (Pl.'s Supp. Brief).

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

1  SOL Republic headphones, when in fact he had intended to purchase Signeo headphones; and (2)

2  two women were sent to purchase Signeo's headphones, but one woman inadvertently purchased

3  SOL Republic's.[91]

4       SOL Republic responds that Signeo's allegations of actual confusion do not demonstrate

5  confusion in a manner probative of harm to the trademark owner. SOL Republic also has submitted

6  its own declarations asserting no knowledge of customer confusion, including by top officers in

7  companies that carry both parties' headphone products.[92]

8       The court cannot assign much, if any, weight to Signeo's evidence of actual confusion. The

9  two instances of consumer confusion Signeo identifies help, but both are anecdotal and rise only to

10  the level of *de minimis* evidence.[93] In *Rearden LLC v. Rearden Commerce, Inc.*, the same type of

11  evidence was submitted to the court. Judge Patel noted that the case law in which courts considered

12  the confusion of non-consumers did not extend to the Ninth Circuit, "whose precedents clearly

13  hold that the key inquiry is confusion of prospective purchasers."[94] And while *Rearden* plaintiffs

14  did cite to two incidents of actual consumer confusion, the court nevertheless rejected them both

15  because they illustrated confusion with respect to the parties' names only.[95] In addition, SOL

16  Republic is correct that it is difficult to ascribe actual consumer confusion regarding the marks to

17  the people who wandered into Signeo's booth looking for SOL's Kevin Lee,[96] as opposed to

---

[91] *See id.*

[92] *See* Docket No. 14-2 ¶¶ 3, 5 (Hix Decl.), Exs. A, B.

[93] *See, e.g.*, *Glow Industries, Inc. v. Lopez*, 252 F. Supp. 2d 962, 999 (C.D. Cal. 2002) ("De minimus evidence of actual confusion does not establish a likelihood of consumer confusion, and the evidence presented must refer to the confusion of reasonable and prudent consumers, not confusion among sophisticated members of the consuming public."); *see also SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, --- F. Supp. 2d. ----, Case No. C 11-4991 CW, 2012 WL 368677, at *11 (N.D. Cal. Feb. 3, 2012) (finding that ten examples of actual consumer confusion did rise to the level of "some evidence" to support actual confusion evidence).

[94] 597 F. Supp. 2d at 1023 n.9.

[95] *See id.* at 1023-24 (finding that two instances of actual confusion – one from a customer who expressed confusion over which party it conducted business with, and another involving dozens of misdirected emails – did not rise to the level of actual confusion by the consuming public).

[96] *See, e.g.*, Docket No. 11-1 ¶¶ 38-41; Docket No. 11-3 ¶¶10-15; Docket No. 11-2 ¶¶ 8-11; Docket No. 11-7 ¶¶ 3-6 (Westbrook Decl.).

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

1    potential confusion surrounding location of the booths or the fact that SOL Republic did not have a

2    booth. Thus, notwithstanding Signeo's evidence of repeated instances involving industry players

3    and retail associates who have demonstrated confusion, Signeo presents little evidence regarding

4    the purchasing consumer – the necessary focus of the confusion inquiry.

5                                   *5.   Marketing Channels*

6            "Convergent marketing channels increase the likelihood of confusion."[97] This factor

7    receives greater weight when the products are sold in niche marketplaces and less weight when the

8    products share a "ubiquitous marketing channel" such as the online marketplace.[98]

9            Although the parties overlap in many of their online and in-store markets, SOL Republic

10   argues that most of these channels are "visual," in which the advertisements and displays clearly

11   demonstrate the differences in the parties' trademarks. SOL Republic further points out that Signeo

12   has introduced no evidence of side-by-side marketing through radio or other audio channels that

13   theoretically could present increased risk of confusion. Signeo contends that several of the shared

14   online forums, such as the Apple store, are akin to a "niche" market in which the highly similar

15   products are sold side-by-side. Furthermore, both products are sold, or soon will be sold, alongside

16   each other in a variety of concrete stores.[99]

17           Unlike the mere presence of two potentially confusing marks, both of which are advertised

18   online,[100] the significant overlap between the parties' marketing channels in numerous exclusive

19   venues, online and in-store, increases the likelihood of consumer confusion and weighs in favor of

20   Signeo.

21                                   *6.   Other Factors*

22           The court assigns little weight at this time to the remaining *Sleekcraft* factors related to a

23   purchaser's likely degree of care in selecting the product, the defendant's intent in selecting the

---

[97] *Sleekcraft Boats*, 599 F.2d at 353.

[98] *See Network Automation, Inc.*, 638 F.3d at 1151.

[99] *See* Docket No. 16-1 ¶ 5; *see also* Docket No. 32 at 7-8 (Pl.'s Supp. Brief).

[100] *See Network Automation, Inc.*, 638 F.3d at 1151.

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    challenged mark, and the likelihood of expansion into other markets. The court has seen no

2    evidence to guide its analysis of what constitutes a typical buyer exercising ordinary caution in the

3    purchase of headphones in the SOUL and SOL Republic price ranges.[101] Without more, Kevin

4    Lee's unsupported testimony that "[c]onsumers of headphones in price points above $20 are very

5    brand conscious and take great care to purchase headphones"[102] is insufficient to persuade the court

6    away from "undue reliance on the 'supposed sophistication' and care of consumers" when even

7    expensive goods are concerned.[103] This is especially true in light of Signeo's proffer of evidence

8    suggesting that even the retail associates at leading consumer electronics stores are not so

9    discerning. In addition, the fact that both Signeo and SOL Republic purport to provide high quality

10   headphone products with carefully developed brand association might "contribute to the

11   assumption of a common connection"[104] between the marks, cutting against the differentiation that

12   a reasonably cautious consumer otherwise would recognize.

13          With respect to SOL Republic's intent in adopting the SOL REPUBLIC mark and using

14   only the "SOL" acronym on the product itself, each side has presented evidence to contradict the

15   other.[105] Without the benefit of oral testimony subject to cross-examination, the court is in a poor

16   position to assess the veracity of controverted factual issues presented by competing affidavits.[106]

17   Thus, although evidence that the alleged infringer knowingly adopted a mark similar to plaintiff's

18   ――――――――――

     [101] *See Sleekcraft Boats*, 599 F.2d at 353 (citing *HMH Publishing Co. v. Lambert*, 482 F.2d 595,
19   599 n.6 (9th Cir. 1973)).

20   [102] *See* Docket No. 14-3 ¶ 13.

21   [103] *See Sleekcraft Boats*, 599 F.2d at 353 (quoting *Omega Importing Corp. v. Petr-Kine Camera
     Co.*, 451 F.2d 1190, 1195 (9th Cir. 1971)).

22
     [104] *See id.*
23
     [105] *Compare* Docket No. 14-3 ¶¶ 3-12 (describing the creative process behind founding SOL
24   Republic, developing the SOL REPUBLIC brand, and finalizing the SOL logo without any
     recollection of learning about the SOUL brand or discussing potential confusion between SOL and
25   the SOUL mark) *with* Docket No. 11-1 ¶¶ 27-29 (describing 2009 conversation with Kevin Lee
     about the SOUL product line and potential trademark confusion if Lee pursued a SOL mark for
26   competing headphones).

27   [106] *See Wounded Knee Legal Defense / Offense Comm. v. Federal Bureau of Investigation*, 507
     F.2d 1281, 1287 (8th Cir. 1974). *See also Indus. Elec. Corp. v. Cline*, 330 F.2d 480, 483 (3d Cir.
28   1964).

――――――――――

18

United States District Court
For the Northern District of California

1   is probative of an increased likelihood of confusion,[107] the court finds that such an intent has not

2   been established by a preponderance of the evidence.

3   Both parties agree that because the SOUL and SOL Republic product lines are direct

4   competitors, the likelihood of expansion factor is neutral.[108] As noted earlier, the products already

5   overlap in retail spaces and marketing channels.

6   In sum, Signeo has presented some evidence to support its contention that SOL Republic's

7   use of the "SOL" acronym for its headphone line presents a likelihood of confusion with the SOUL

8   headphone products. This finding is based primarily on the proximity and relatedness of the goods

9   and the marketing channels they share. The absence of compelling evidence of actual confusion

10  among consumers, however, is noteworthy, as is the relatively weak evidence on the similarity of

11  visual (and not just the sound) impression of the marks. The likelihood of confusion is further

12  dampened by the relative weakness of the SOUL mark and the neutrality of other factors such as

13  intent of SOL Republic to tread on Signeo's trademark and the degree of care exercised by

14  consumers. The net of all this is that, even if Signeo can establish the validity of its mark, the court

15  is not persuaded that Signeo is likely to demonstrate confusion sufficient to succeed on the merits

16  of its claim.

17  **2.      Irreparable Harm**

18  "[T]he absence of a substantial likelihood of irreparable injury would, standing alone, make

19  preliminary injunctive relief improper."[109] It is Signeo's burden to demonstrate that irreparable

20  injury is real and imminent, not merely a possibility of remote future injury.[110] The potential loss of

21

22

23  ---
    [107] *See Sleekcraft Boats*, 599 F.2d at 354 (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 157-58 (9th Cir. 1963)).

24  [108] *See* Docket No. 14 at 13; Docket No. 16 at 6.

25  [109] *Siegel v. Le Pore*, 234 F.3d 1163, 1176 (11th Cir. 2006).

26  [110] *See Winter*, 555 U.S. at 22. *See also Grupion, LLC v. Groupon, Inc.*, --- F. Supp. 2d ---, 2011

27  WL 5913992, at *6 (N.D. Cal. 2011) ("[U]nder *Winter*, [plaintiff] is required to demonstrate, by the introduction of admissible evidence and with a clear likelihood of success that the harm is real, imminent and significant, not just speculative or potential.").

28

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

1  goodwill or the loss of the ability to control one's reputation may constitute irreparable harm for

2  purposes of preliminary injunctive relief.[111]

3        Signeo vigorously contends that recent Supreme Court developments tightening the

4  requirements for issuance of a preliminary injunction do not alter the presumption of irreparable

5  harm as it has been applied to trademark cases in the Ninth Circuit.[112] Having rejected at this stage

6  Signeo's arguments regarding the likelihood of confusion, the court need not determine, however,

7  whether Signeo is correct.

8        Turning to the evidence of irreparable harm, Signeo contends that SOL Republic's

9  headphones are of lesser quality, and that could result in damage to the SOUL reputation and to a

10  diminution in goodwill. Signeo also argues that SOL Republic's trademark infringement threatens

11  the dilution of years of creative and economic investment by Signeo in building its brand and takes

12  advantage of Signeo's investment and the SOUL mark's reputation.[113] Signeo argues that

13  ultimately these incursions strip Signeo of control over its own reputation and maintenance of

14  goodwill in the eye of its consumers. Signeo has offered to provide the court with documentation

15  of its sales and market penetration data in order to further demonstrate the extent of the goodwill

16  and reputation that it has developed. But it has not to date provided any such evidence.

17        SOL Republic responds that Signeo's assertions are purely hypothetical and fail to provide

18  actual evidence of real and imminent harm to the brand or reputation.

19        Signeo has not met its burden here. Even if the court agreed that confusion has begun to

20  develop in the consumer market in the seven months or so that the products have competed, there is

21  no evidence that the extent of such confusion is substantial enough to result in a loss of control by

22  Signeo over its SOUL mark. This is especially true in considering the unique identity Signeo

23      [111] *See Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603

24  (9th Cir. 1991) (noting "intangible injuries, such as damage to . . . goodwill, qualify as irreparable harm). *See also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir.

25  2001) (same regarding likely loss of newfound customers, accompanying goodwill and revenue).

26  [112] Historically, courts in this circuit presumed irreparable harm upon a showing by plaintiff that
established a likelihood of confusion. *See, e.g.*, *Brookfield Communications, Inc.*, 174 F.3d at 1066;

27  *Abercrombie and Fitch Co. v. Moose Creek Inc.*, 486 F.3d 629, 633 (9th Cir. 2007).

28  [113] *See* Docket No. 16 at 8-9.

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

1    promotes based on its partnership with Ludacris and its offering of several headphones in a price

2    category above SOL Republic's most expensive offering. Signeo also has not established a loss of

3    market share or loss of customers because of infringement.[114] That the two companies are direct

4    competitors in the same general market is not enough to issue a preliminary injunction. On this

5    record the court cannot conclude that any harm to Signeo will be irreparable.

### 3. Balance of Hardships and Public Interest

7    The court also must balance the competing claims of harm to the plaintiff with the

8    potentially devastating effect that enjoining all production or sales of a product before trial can

9    have on the defendant.[115] This analysis takes into account the relative size and strength of each

10    enterprise.[116] In addition, the court considers the public interest when it stands to be affected by an

11    injunction.

12    Signeo argues that the relative time and expense each party has expended on developing its

13    trademarks and brand identity, and the loss of goodwill and reputation that Signeo stands to lose

14    during the time that SOL Republic is allowed to continue its infringing activities, tips the balance

15    of hardships in its favor. Even if a preliminary injunction threatens to halt all of SOL Republic's

16    sales, Signeo contends that this does not alter the balance of hardships because "the only hardship

17    that the defendant will suffer is lost profits from an activity which has been shown likely to be

18    infringing."[117] Signeo also contends that the injunction it seeks is narrow in that it would enjoin

19    only the use of the "SOL" mark on the headphones, not the use of Defendant's corporate name,

---

21    [114] *See Robert Bosch LLC v. Pylon Mfg. Corp*, 659 F.3d 1142, 1153-54 (Fed. Cir. 2011).

22    [115] *See Apple, Inc. v. Samsung Electr. Co., Ltd.* , No. 11-CV-1846-LHK, 2011 WL 7036077, at *23
(N.D. Cal. Dec. 2, 2011) ("The hardship on a preliminarily enjoined manufacturer who must
23    withdraw its product from the market before trial can be devastating.") (quoting *Ill. Tool Works,
Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1998)).

24    [116] *See Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993) ("In evaluating
25    the balance of hardships a court must consider the impact granting or denying a motion for a
preliminary injunction will have on the respective enterprises.").

26    [117] *See* Docket No. 11 at 22 (quoting *Dr. Seuss Enterprises, L.P. v. Penguin Books, USA, Inc.*, 924
27    F. Supp. 1559, 1574 (S.D. Cal. 1996)). *See also Cadence Design Sys., Inc. v. Avant! Corp.*, 125
F.3d 824, 829-830 (9th Cir. 1997).

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

United States District Court
For the Northern District of California

1    SOL Republic, or other competing products that SOL Republic might decide to manufacture and

2    that are non-infringing. According to Signeo, this possibility that SOL Republic may carry on its

3    business undermines any argument that the public interest will suffer as a result of an injunction.

4         SOL Republic responds that its "SOL"-marked headphones are its entire business in which

5    it has made a substantial investment since August 2011 of over $4.5 million.[118] SOL Republic

6    argues that the broad scope of Signeo's proposed injunction would bring the entire company to a

7    halt, affecting not only its sales but the livelihood of its thirty-seven employees and its relationship

8    with customers and business partners. In contrast, SOL Republic argues that the alleged hardship to

9    Signeo is based purely on speculation.

10        As between the two parties, the court is persuaded that the balance of hardships favors SOL

11   Republic, even if slightly.

12        While there is a strong public interest in enforcing intellectual property rights and

13   preventing public confusion around the use of an infringing mark, the proposed injunction is

14   particularly harsh and would affect not only SOL Republic, but also the retail consumer market,

15   and its distributors. To the extent Signeo seeks a return of products already shipped to SOL

16   Republic's distributors and others, it is a mandatory injunction, "which goes well beyond simply

17   maintaining the status quo pendent lite and is particularly disfavored."[119] Even as to the remainder

18   of the injunction, in light of the relative weakness of Signeo's evidence to date regarding its claim

19   that consumers are suffering from source confusion, the court is not persuaded that the public

20   interest is served by a market intervention at this stage.

21

22

23

24

25

26

27   ———————————————
     [118] *See* Docket No. 14-2 ¶ 6.

28   [119] *Marilyn Nutraceuticals, Inc. v. Mucos Pharm GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009).

                                            22
     Case No.: 5:11-cv-06370-PSG
     **ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

1

## IV.   CONCLUSION

2        Signeo's motion for a preliminary injunction is DENIED.

3    **IT IS SO ORDERED.**

4    Dated: June 6, 2012

5                                                                    _____
                                                                    PAUL S. GREWAL
6                                                                    United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

Case No.: 5:11-cv-06370-PSG
**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**